FILED
SUPERIOR COURT
OF GUAM

2012 JUN 28 PM 4:33

CLERK OF COURT

BY: _____

## IN THE SUPERIOR COURT OF GUAM

VICTOR M. REYES,

    Plaintiff,

vs.

DIANA M. REYES,

    Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

DOMESTIC CASE NO. DM0468-07

**FINDINGS OF FACT AND
CONCLUSIONS OF LAW
AND INTERLOCUTORY JUDGMENT
OF DIVORCE**

This matter came before the HONORABLE VERNON P. PEREZ on October 19 and 24, 2011 at bench trial. Attorney Leilani V. Lujan represented Defendant, who was present. Attorney Joaquin C. Arriola Jr. represented Plaintiff, who was present. After having heard the Parties' arguments, considering the Parties' pleadings and the record, the Court now issues the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

1. Any finding of fact is also a conclusion of law. Any conclusion of law is also a finding of fact.

2. This matter arises out of a dissolved marriage between Plaintiff Victor M. Reyes (hereinafter "Plaintiff") and Defendant Diana M. Reyes (hereinafter "Defendant").

3. The Parties were married on November 26, 1993 in Saipan, CNMI. Defendant's Exhibit A.

4. The Parties have no children.

5. The date of separation was sometime in 2005. Although Plaintiff stopped living with Defendant sometime in 2002, the Parties formally separated with the intent to permanently end the marriage in 2005. Plaintiff's Testimony. Some testimony has been submitted to suggest the date of separation was near the end of 2007 when parties last had intercourse in the Philippines. Plaintiff's Testimony. Yet, the Court

*Victor M. Reyes v. Diana M. Reyes,*
Findings of Fact and Conclusions of Law
Domestic Case No. DM0468-07    - Page 1 of 16 -

finds that parties intended to permanently end the marriage in 2005, the exact date of which is not ascertainable.

6. The Parties met in 1992 when Plaintiff submitted his taxes to the Department of Revenue and Taxation, where Defendant worked. The Parties lived together at Apugan Villa Estates before being married. Plaintiff acquired Unit A-4 on November 5, 1993, but lived at the townhouse for more than a year before purchasing it. To purchase Unit A-4, Plaintiff paid $20,000.00 down of his own personal funds and secured the remaining costs through a mortgage from Bank of Guam. Plaintiff's Exh. 7. Although Defendant has remained in Unit A-4 beyond the date of separation, Plaintiff has consistently paid the mortgage payments and common area fees. Many of the monthly payments were made during the time of the marriage in which payments where made with community income.

7. Plaintiff and Defendant created HELI-GUAM, INC., a Guam corporation (hereinafter "Heli-Guam") in May 1994. Plaintiff owns 500 shares and Defendant owns 499 with a single share going to William Joseph Cunningham. Both Parties worked for Heli-Guam from 1994-2000. Heli-Guam obtained a loan from GEDA in the amount of $184,400.24 in March of 1998. Defendant's Exhibit C; *See* Defendant's Testimony Defendant owns an 49.9 (499/1000) percent interest in Heli-Guam, its property and liabilities while Plaintiff owns a 50 (500/1000) percent share. Plaintiff's Exh. 9.

8. The Parties purchased a vacant lot in Talofofo for $45,000.00 which both Parties agreed thereafter to deed to Plaintiff's father.

9. During a majority of the marriage, Plaintiff was away on fishing vessels.

10. Currently, Plaintiff works at PESKA HELICOPTERS, INC. (hereinafter "Peska") out of Pohnpei, Federated State of Micronesia and he has worked there since 2009. Plaintiff's Testimony.

11. Currently, Defendant works for the Department of Revenue and Taxation and has worked there since 2004. Defendant's Testimony.

## CONCLUSIONS OF LAW

12. Plaintiff and Defendant have been residents of Guam for more than ninety (90) days in satisfaction of 19 GCA § 8318(a). This Court has jurisdiction pursuant to 7 GCA § 3105 and § 4101 and 19 GCA Ch. 8.

13. The Divorce is granted to Plaintiff on the basis of irreconcilable differences. Based on the evidence and record, Defendant is also granted Divorce based on willful desertion and willful neglect. Adultery and cruel mistreatment and other grounds for divorce were not present in the record or from the evidence presented by either Party.

14. The standard and law governing divorce is discussed in the section below. Separate property means property acquired by either spouse before marriage or after entry of a decree of dissolution of marriage or earnings of a spouse while living separate. 19 GCA § 6101. Property is classified as separate or community based upon when it is acquired. *Id.; In re Marriage of Moore*, 28 Cal.3d 366, 370 (Sup.Ct.Cal.1980); *Fisher v. Fisher*, 383 P.2d 840, 842–43 (Id.Sup.Ct.1963); *Hollingsworth v. Hicks*, 258 P.2d 724, 729–30 (N.M.Sup.Ct.1953); *Lawson v. Ridgeway*, 233 P.2d 459, 464 (Ariz.Sup.Ct.1951); *Smith v. Smith*, 685 So.2d 649, 651–52 (La.Ct.App.1st Cir.1996); *In re Marriage of Harrington*, 935 P.2d 1357, 1365 (Wash.App.Div.1 1997); and *Scott v. Estate of Scott*, 973 S.W.2d 694, 695–96 (Tex.App.El Paso 1998). Pursuant to the Guam Supreme Court's ruling in *Rinehart v. Rinehart*, enhancement to separate property or debt will allow the community to seek reimbursement for community funds contributed during the marriage towards that asset. *Rinehart v. Rinehart*, 2000 Guam 14, ¶¶19–21 (Sup.Ct.Guam 2000). The Supreme Court of Guam has extended the *Rinehart* ruling to apply to both assets and debt in *Navarro v. Navarro*, again holding that "absent proof of the enhancement of a spouse's separate property, there should be no reimbursement to the community." *Navarro v. Navarro*, 2000 Guam 31, ¶16 (Sup.Ct.Guam 2000). The formula used by the Supreme Court of California grants the non-owning spouse a *pro tanto* community share in the *equity* or *capital appreciation* of the home as enhanced by community payments made to the principal

owed on the mortgage, based on the real property's appraised value. *In re Marriage of Moore*, 28 Cal.3d 366, 370–71, 373–74 (Sup.Ct.Cal.1980).

The formula used to compute the community *pro tanto* share in the *Moore* case is called the Lucas/Aufmuth formula and requires the court to first determine the separate property percentage interest by crediting the separate property with the down payment and full amount of the loan or the original value of the contributed separate property, minus the amount by which the community payments reduced the principal balance of the loan. Under Guam law, community property is different than community debt. *Compare* 19 GCA § 6101 *with* 19 GCA § 6102. Loans acquired during a marriage constitute community debt. 19 GCA § 6102 states: "(b) *Community debt* means a debt contracted or incurred by either or both spouses which is not separate debt." The Supreme Court of Guam has determined that it is not the burden of the trial court to find or show valuation, that burden lies with the parties. *Navarro v. Navarro*, 2000 Guam 31, ¶9 (Sup.Ct.Guam 2000). As aptly stated by the Supreme Court of Guam, "[one party]" bore the burden of establishing the value of community property at trial, where he failed to provide or contest valuation, the trial court was well within its discretion to accept the values provided by [the opposing party]." Id. at ¶11. As stated by the *Moore* court, this method of using capital appreciation and equity best credits the amount given from separate property for the original contribution, and best credits the role the original separate asset played in creating the equity in the home/real property. *In re Marriage of Moore*, 28 Cal.3d 366, 374 (Sup.Ct.Cal.1980).

Under 19 GCA §8411(b) and *Sinlao v. Sinlao*, 2005 Guam 24, ¶23 (Sup.Ct.Guam 2005), the Court is required to strive to divide the community property equally between the parties whenever possible. In this case, the Court was presented with evidence of the existence of community property and community debt.

15. 19 GCA §8411(b) provides: "[i]f the decree be rendered on any other ground than that of adultery or extreme cruelty, the community property shall be equally divided

between the parties. Thus, the finding stated earlier that Plaintiff's complaint for divorce is granted under 19 GCA §8203(g) and not under any other ground for divorce requires that this Court ascertain all community property and divide it equally among the Parties. During the marriage, Parties have acquired community property, including the following vehicles:

A. Hyundai Acura, 1990;

B. Toyota Hilux, 1995;

C. Hyundai Sonata, 1998;

D. BMW, 2005;

E. Toyota Tocoma, 2007.

The vehicles names above are community property as determined by their respective Auto Registration containing joint ownership. Defendant Testimony; *See* Plaintiff's Exhs. 2-6. The matter that complicates the vehicle distribution is that two vehicles are substantially more valuable than the remaining vehicles. According to the testimony of both Parties, the 2007 Tacoma and the 2005 BMW are worth much more than the remaining vehicles and both are in the possession of the Defendant. The 1995 Hilux and 1998 Sonata are in Plaintiff's possession.

16. Defendant has as her separate property a 1990 Nissan 300ZX. All other vehicles are community property.

17. **Apugan Villa Estates, Unit A-4**

Unit A-4 is Plaintiff's separate property as it was purchased in Plaintiff's name before the marriage. Plaintiff's Exh. 7; *see* 19 GCA § 6101. Yet, there is the issue of the community funds used to pay down the mortgage. Defendant asked to be reimbursed for her payments which come out to be half of all payments made during marriage.[1] Defendant has lived in the townhouse throughout the marriage and made use of it via possession long after the date of separation. Community property is a

---

[1] The *Rinehart* decision allows for reimbursement for community funds spent to improve separate property.

gift when used to pay separate property without improvement. *Navarro v. Navarro*, 2000 Guam 31 at ¶16. Here, the townhouse is clearly Plaintiff's separate property due to date of acquisition and no improvements were made to the property, thus, no reimbursement can be given. As a result, the Bank of Guam Loan is also Plaintiff's separate property debt with no reimbursement to the community.

18. **Bank of Guam Loan**

The Bank of Guam Loan is a separate property debt belonging to the Plaintiff paid down with at least some community property. The debt will remain with Plaintiff alone until it is completely paid off.

19. **Heli-Guam Inc.**

Both Parties own, as community property, their shares of Heli-Guam as those shares were acquired during the marriage.[2] All helicopters, parts or stocks still retaining value belonging to Heli-Guam are divisible to the Parties according to their share.[3] Defendant owns a 1/2 community interest in Plaintiff's 50% and Plaintiff owns a 1/2 community interest in Defendant's 49% which equates on both sides to approximately 49.5% interest in the business. The property of Heli-Guam, including the helicopters and parts, has been valued by one Party to be at $220,000.00 currently.[4] Yet, at the time Heli-Guam was dismantled, the property was worth far less. However, in the time after Heli-Guam seized to operate, Plaintiff has used the remaining Heli-Guam property to acquire lucrative contracts. With the Heli-Guam helicopters and parts, Plaintiff obtained several contracts from 2002-2010 which required the use of at least some of the parts owned by Heli-Guam. The Court finds that Plaintiff's expertise, mechanic abilities and his labor made up the vast majority of the contract receipts he obtained throughout the length of the contracts he received.

---

[2] As a matter of stature construction, the Court is unable to deem the Heli-Guam stock anything but community property. 19 GCA § 8401.

[3] A one percent share must go the third investor upon dissolution of Heli-Guam.

[4] The Court may accept the values presented by Defendant where the Plaintiff failed to provide or contest said valuation. *Navarro v. Navarro*, 2000 Guam 31 at ¶11.

The estimation of the parts and helicopters value to these contracts is much harder to ascertain. In any event, Defendant owns 49.5% of the helicopter and parts. Thus, Plaintiff must pay Defendant for less than 49.5% of the value of the helicopters and their parts at the date of separation to discount Plaintiff's skill, labor and expertise.

The helicopter valuation is tricky as Plaintiff used his separate funds obtained after date of separation to greatly enhance the value of the remaining Heli-Guam helicopter frames some time between 2008-2010. The Court finds that only one helicopter is currently in use and valued at $220,000.00 according to the only evidence presented to the Court, yet at date of separation the frames were estimated to be valued at $15,000.00 for one helicopter and $10,000.00 for two others, which the Court will take as fact under the *Navarro* case.

Testimony was given by the Parties that nine helicopters existed at one point. The Court believes Plaintiff's statements that only three helicopter frames remain viable presently. Yet, the only three helicopters being used for Peska currently were worth a combined $35,000.00 at the time of the date of separation. Only after the date of separation did Plaintiff take the helicopters and use them to obtain contracts with fishing companies. Thus, Plaintiff must pay Plaintiff for her share of the $35,000.00 which is $17,500.00. No other evidence indicates that Plaintiff has sole possession or sold any of the other Heli-Guam property. From the record and testimony, the Court concludes that all property remains in the storage containers which are themselves community property wherever they are located. Defendant will be assigned her community interest in all of Heli-Guam property and debt, but, this Court will ensure that she be reimbursed for her efforts during the marriage in which time Plaintiff had income before the date of separation in 2005 and Defendant has not been provided with an adequate amount of that income.

As to Defendant's interest in Plaintiff's current business ventures, clearly Defendant does not maintain a 49% interest in Plaintiff's current business ventures as Plaintiff's investment in his recent business, including labor and helicopter parts, was

not 100% Heli-Guam assets. The Court finds that Plaintiff's current interest in the Defendant's business is negligible as Heli-Guam's assets were only a small portion of total investment Plaintiff made in the current business venture. As a whole, Defendant owns roughly a $17,500.00/ (50% of 3*$370,000.00). $17,500.00(Defendant's investment in Plaintiff's current business) /$555,000.00(which is Plaintiff's share in the three year contract) equals .03%. Defendant owns a .03% interest in Plaintiff's current business venture. Every year, Defendant earns roughly $5,550.00 of the contract received by Plaintiff due to her .03% interest in Plaintiff's 50% of $370,000.00 yearly income from the present contracts. [5] Defendant should be paid for the use of her interest in Plaintiff's current endeavors.

As to Heli-Guam liabilities, Heli-Guam also obtained a GEDA loan to acquire the original helicopters. That loan was secured in part with Defendant's Mother's Yona property. Defendant's Exh. G. The Yona Property should be released upon complete payment of the GEDA loan. Heli-Guam also acquired a debt of approximately $14,266.00 for Pacific Care Insurance. Defendant's Exhibit P. The Pacific Care debt is community debt. In addition and throughout trial on this matter, it was mentioned that Heli-Guam has incurred unpaid taxes over the years. Both parties are responsible for community debt. They must pay equal shares of the unpaid taxes.

20. **GEDA Loan**

The GEDA loan itself was acquired for Heli-Guam and as such Heli-Guam debt is community debt of both parties because the debt was obtained for a business venture during the marriage. 19 GCA § 6102(b).

21. **2002-2005 Contract**

---

[5] Valuation of the helicopters and other Heli-Guam assets comes from the Court's review of Defendant's Exhibit D (Taxes) in conjunction with Exhibit I (Contracts). From Exhibit D, the Court has seen Heli-Guam earn $2,275,833.00 in 1997. The Aircrafts in Heli-Guam's possession at that time amounted to roughly $1,676,825.00 with a 5 year depreciation of $1,510,792.00. Now after the date of separation, the Court is confident in its appraisal and valuation of Heli-Guam assets as of 2002. From Exhibit I, the Court is confident in its appraisal of Defendant's interest in Plaintiff's current business ventures.

Plaintiff obtained the contracted income during the marriage and income is community property. The Court understands that Plaintiff's labor, expertise and skill played a significant role in his obtaining the WinFar contract in 2002, yet, the Court must follow the statute on community property. Regardless of what Plaintiff paid for with this contracted income, he maid $1,080,000.00 over three years during the marriage and before the date of separation. That entire income is community property under 19 GCA § 6101(b). As a result, the Defendant is owed $540,000.00 as her share of the community property. This amount should be adjusted to include the support Plaintiff provided to Defendant between 2002 and 2005. By providing the Defendant with a place of residence and giving money to pay for bills related to the marriage, the Court may conclude that Plaintiff supported his wife at the time between 2002 and 2005. Defendant's Testimony on October 24, 2011 at 10:40a.m.. Therefore, the Court will reduce the $540,000.00 by what the Court determines the rental value of the Unit A-4 to be during that three year span. The Count concludes that the rental value of the Unit A-4 was $1,500.00 per month and other marriage or utility costs that Plaintiff paid for came to a total of $2,800.00 per month. During the time of 2002 and 2005 Plaintiff should have given Defendant her community share of $540,000.00 but only provided about $2,800.00 a month in support. ($2,800.00x 36 months)= $100,800.00. Therefore, Plaintiff should pay to Defendant $439,200.00 for his earnings from 2002 to 2005 where Defendant provided very little support to his wife compared to his great annual income.

There was some evidence put on that Plaintiff no longer lived with Defendant as of 2002 which would have ended the community status of Plaintiff's earnings. Yet, there were still attempts made to reconcile and Plaintiff admits to have stayed with Defendant at the family home and no intent to end the marriage was evident. As such, no argument would stand that the 2002-2005 contract was after the marriage pursuant to 19 GCA § 6101(a)(2). The Plaintiff shall pay Defendant half of all income earned during the marriage and while the Parties were still living together.

## 22. 2005-2010 Contracts

Plaintiff obtained these contracts after the date of separation and they are his sole separate property, but Defendant had a .03% interest in these annual salaries from the contracts due to the unconsented to investment of her portion of the remaining helicopter parts. Defendant should also receive $5,550.00 a year until the Heli-Guam helicopter parts are no longer used by Plaintiff. Starting from 2005, the total to present is $33,300.00 which comes from $5,550.00 a year from 2005-2011. Plaintiff should pay out this sum plus the future .03% interest in any Contract involving Heli-Guam parts. If Plaintiff chooses to continue utilizing Heli-Guam frames in his current businesses, then he must continue to pay according to Defendant's .03% interest. If Plaintiff desires to remove Defendant's interest in his future business, then he must return her share of the helicopter parts or buy out her half of the $220,000.00 helicopter being used today. Plaintiff can pay Defendant about $5,550.00 per year or he can pay Defendant $110,000.00 now to forever remove her interest in the his current and future use of the Heli-Guam parts.

## 23. Talafofo Property

The Talafofo property was community property when purchased, but was gifted via deed to Plaintiff's father and that deed was acknowledged by Defendant. Both Parties agreed to the transfer of title. The Court is unable under the law to force a non-party to transfer the deed back to the Parties to allow property division. The Court also has no evidence other than mere suggestion that the property was intended to remain with the Parties but given away in an attempt to hide the property for tax purposes. The Court finds that sufficient evidence has been put forth that Parties deeded over the property as appreciation for the prior financial assistance provided by Plaintiff's father. Therefore, the Talafofo property will not be divided by this Court as it is not a community or separate property belonging to either Party.

## 24. UOG Tuition

Defendant asks the Court to force Plaintiff to pay for her tuition at UOG or in lieu of the tuition and other concerns, increase spousal support. The Court will not require Plaintiff to pay for Defendant's future expenses for continued education without a sound basis in case law or statute. Plaintiff will not be required to pay for Defendant's tuition directly or by an increase in spousal support.

## 25. Life Insurance Policy

Defendant claims that she pays for the Life Insurance Policy on Plaintiff and wants Plaintiff to take over payments. Even if the Court finds this to be true, the Defendant is the named beneficiary and the term insurance policy originated on December 28, 2005 which the Court must assume is after the date of separation which occurred sometime earlier in 2005. Defendant's Exh. N. The insurance policy is not for the Plaintiff's benefit. Plaintiff has no obligation to continue or take over insurance premiums for Defendant's benefit that Plaintiff did not provide for during the marriage. If Defendant so desires to continue the life insurance policy, she can do so from her own personal funds.

## 26. Utility Bills

All utility bills associated with Unit A-4 are Plaintiff's responsibility as the townhouse is his separate property and any costs accruing over the pendency of this divorce will be deemed as his continued support of Defendant.

## 27. Spousal Support

It is clear that Plaintiff was the breadwinner of the marriage. Although Defendant continually earned a decent income throughout the marriage, it was Plaintiff's special skills that allowed the family to make a great income for at least some of the years during the marriage. Due to the great difference in earning power among the Parties, the Court finds that Defendant should receive spousal support. After reviewing the tax documents and Peska income statements admitted into evidence and after reviewing the testimony on Plaintiff's current and expected

income, the Court is confident that Peska will pay Plaintiff about $120,000,000 a year after 2010 that he can spend freely. The Court came to this number from the contracted yearly salary of $370,000.00 discounted by the fees, costs and other arrangements explained by Plaintiff to exist such as sharing with the other owner of Peska. Plaintiff explained that he only has about $2,000.00 of usable income each month after all costs associated with running the helicopters and complying with the contract. Yet, Plaintiff also explained that a big cost is the loan he took out with WinFar to finance the helicopter parts such as expensive rotors and electronics. Eventually that loan will be paid down and Plaintiff will make significantly more per year. In any event, Plaintiff has a much greater earning capacity than Defendant due to his unique set of skills.

Absent some other showing of the actual net earnings Plaintiff makes from his contracts and business with Peska, the Court finds that Plaintiff earns roughly $10,000.00 every month as explained above. The Court finds that the valuation presented by Plaintiff coinciding with the Parties' testimony Defendant earns roughly $2,600 a month or $31,600.00 a year. The Court finds that $1,500.00 every month in spousal support is reasonable.

## ORDER

28. It is hereby ordered that the following distribution occur.

   A. **All Other Vehicles Other than the Nissan 300 ZX**: are deemed to be community property regardless of whose possession they are in. The Court will give the Parties the option of choosing between a Court forced sale of the vehicles or allowing the parties to buy each other's share in the vehicles. If the Parties opt with the forced sale or cannot come to an agreement, the Court will order that all community property vehicles be sold and all proceeds be divided evenly.

   B. **Nissan 300 ZX**: is deemed to be separate property belonging to the Defendant and it will remain with the Defendant.

C. **Apugan Villa Estates, Unit A-4**: is deemed to be separate property of the Plaintiff as it was purchased in Plaintiff's name alone before marriage. As the community property used to pay down the mortgage did not go to improve the value of the property, the Plaintiff owes no reimbursement to Defendant for the townhouse.

D. **Bank of Guam Loan**: is deemed Plaintiff's separate debt.

E. **Heli-Guam Assets and Debts**: are deemed to be community property of each spouse according to the 49.5% share mentioned above.

    a. **Tax Debts**: are deemed community debts and must be paid off evenly by both Parties.

    b. **GEDA Loan**: is deemed community debt and must be paid off evenly by both Parties. If Plaintiff is currently paying the loan down without assistance from Defendant, he should stop paying the whole price and should only pay half and the same is true if Defendant is the Party paying on the GEDA loan without help. Yet, the Parties should recognize that both Parties are accountable on the loan should the other Party stop paying.

        i. **Yona Property**: is deemed not a property of any Party. No reimbursement will be given to either spouse and that Property should be immediately released back to Defendant's mother upon complete payment. Both Parties are obligated to pay the remaining loan balance.

    c. **Helicopters**: are deemed community property. In ascertaining their value for distribution, the Court considered the value of the property at the date of separation. Plaintiff must pay Defendant for her investment of her share of the remaining Heli-Guam property into Plaintiff's current business ventures in the amount of $5,550.00 a year. Plaintiff owes Defendant $33,300.00 for the last six years. Plaintiff maintains

the option to buyout Defendant or continues to pay her according to her .03% interest for using Heli-Guam frames.

    d. **Storage Containers**: are deemed community property and will be sold with their contents and the proceeds divided among the Parties evenly. This should be done as soon as possible as the containers are not located on land owned by the Parties.

    e. **Remaining Value or Property**: is deemed community property and anything relating to Heli-Guam not distributed by this agreement shall be divided evenly among the parties including all remaining debts.

F. **2002-2005 Contract**: is deemed community property and Plaintiff must pay Defendant $439,200.00 as explained above. In addition to the $33,300.00 owed for the previous years of Defendant's investment of her share of the Heli-Guam assets, Plaintiff shall pay Defendant $3,000.00 a month until repayment is complete. Plaintiff has the option of paying the entire sum at one time or paying more than the $3,000.00. This payment shall be in addition to spousal support. The total amount owed for all of Plaintiff's previous obligations to Defendant during marriage and up until this Decree of Divorce is $472,500.00

G. **2005-2010 Contracts**: is deemed separate property, but Plaintiff is obligated to pay to Defendant her interest in the Contracts using Heli-Guam assets. This sum comes to $33,300.00.

H. **Talafofo Property**: is deemed gifted to Plaintiff's father and the property will not be divided or assigned to any Party to this case.

I. **UOG Tuition**: is deemed the separate debt of the Defendant and Plaintiff will not be required to pay for any past or future tuition costs.

J. **Life Insurance Policy**: is deemed the separate property of the Defendant and the Court will not require Plaintiff to reimburse Defendant for payments or to take over payments on the policy.

*Victor M. Reyes v. Diana M. Reyes,*
Findings of Fact and Conclusions of Law
Domestic Case No. DM0468-07      - Page 14 of 16 -

K. **Utility Bills**: is associated with Unit A-4 and Unit A-4 is adjudged to be Plaintiff's separate property. As a result, Plaintiff is responsible on making all utility payments on the townhouse.

L. **Spousal Support**: The Court will require that Plaintiff pay $1,500.00 a month in spousal support for six years following final decree of divorce. If Defendant remarries, that support shall end. This support order shall release Plaintiff of any further obligation to provide medical bills, insurance premiums, tuition or any other continuing costs associated with Defendant in excess of the $1,500.00 a month in spousal support.

M. **Payments in Sum**: Plaintiff shall pay to Defendant $1,500.00 a month for six years in spousal support and $3,000.00 a month until the $472,500.00 is entirely paid.

N. All debts in a spouses name alone are separate debts. All miscellaneous property items in the possession of a Party shall remain their respective separate property. All other property not mentioned in this section is assumed to be the separate property of the spouse currently with possession or as discussed above.

29. On evidence presented to the satisfaction of this Court, Plaintiff's Complaint for Divorce should be granted to Plaintiff. It is ORDERED and DECREED as an Interlocutory Judgment that Plaintiff is entitled to Divorce from Defendant on the above stated grounds. Within six(6) months of this Interlocutory Judgment, the Parties or the Court may move the Court to enter a Final Judgment granting divorce and restoring the Parties to the status of single persons, and permitting either Party to marry after the entry thereof.

30. This is not a final judgment of divorce, the Parties are still husband and wife and neither can remarry in Guam or anywhere else until a Final Judgment of Divorce is entered.

So ORDERED this ___ day of May, 2012.

Original Signed By
HON. VERNON P. PEREZ

_____
HONORABLE VERNON P. PEREZ
JUDGE, SUPERIOR COURT OF GUAM

I do hereby certify that the foregoing is a full true and correct copy of the original on file in the office of the clerk of the Superior Court of Guam

Dated at Hagatna, Guam

JUN 2 8 2012

Jacqueline S.C. Terlaje
Deputy Clerk, Superior Court of Guam